NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESUS and LIGAYA FLORES, CARLOS GABRIEL, MARILOU LELINA, SPHENDIM and ADISHA ZIBA, CATALINO and CLAUDIA BAUTISTA, EDUARDO and LORNA DIAZ CABRERA, DENISE and JAMES CARROL, CESAR G. and MILDRED A. ESTACIO, LORY LIM and CENON ESTEFA, MIKE and ARCELI BALINGIT, AMADIO MAULUDI and ROSE QUIAMBAO, MOBEEN and RAFIA MORTUZA, LIEZL and JESSIE ROBLES, JOEPE GUY, CIRO and FRANCA CONTI, MARIA and ALEXANDER YAMBAO, FILNORMAN and VALMEROS LAPING, MARAD KATIB, ZHANG LI,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO, N.A., WACHOVIA BANK, JOHN DOE 1-10,<br><br>    Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 11-CV-05535 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.

   This matter comes before the Court upon motion by Defendants Wells Fargo, N.A. ("Wells Fargo") and Wachovia Bank ("Wachovia")(collectively "Defendants") to dismiss the Complaint of Plaintiffs Jesus and Ligaya Flores, Carlos Gabriel, Marilou Lelina, Sphendim and Ashisha Ziba,

Catalino and Claudia Bautista, Eduardo and Lorna Diaz Cabrera, Denise and James Carrol, Cesar G. and Mildred A. Estacio, Lory Lim and Cenon Estefa, Mike and Arceli Balingit, Amadio Mauludi and Rose Quiambao, Mobeen and Rafia Mortuza, Liezl and Jessie Robles, Joepe Guy, Ciro and Franco Conti, Maria and Alexander Yambao, Filnorman and Valmeros Laping, Marad Katib, and Zhang Li, pursuant to FED. R. CIV. P. 12(b)(6).  Pursuant to FED. R. CIV. P. 78, no oral argument was heard.  After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendant's motion to dismiss is **granted**.[1]

I. **BACKGROUND**[2]

This case arises out of the alleged predatory lending practices perpetrated by Defendants during mortgage transactions entered into with Plaintiffs on their subject properties. Pls.' Compl. ¶

---

[1]The Court notes that the instant motion is one of many before this Court in twenty-five related matters filed between September 22 and 23, 2011 following the dismissal of Almazan, et al v. 1st 2nd Mortg. Co. Of N.J., Inc., et al., No. 10-1336, 2011 WL 2652149 (D.N.J. June 30, 2011).  After reviewing the complaints in each of the related matters, it appears that all of the complaints are substantively the same in several material regards and appear to be variations on the same formulaic complaint.  As a result, the complaints all suffer from the same deficiencies, namely a failure to plead a plausible claim to relief.  Accordingly, the Court will simultaneously decide the twelve motions presently before it and dismiss the complaints in the following cases: Lelina v. 1 st 2nd Mortgage Co. of NJ, Inc. (11-5517); Abanto v. Bank of America, N.A. (11-5519); Estacio v. Deutsche Bank Nat'l Trust Co. (11-5522); Abucay v. GMAC Mortgage Corp. (11-5523); Salazar v. Nat'l City Bank (11-5528); Isip v. Nationstar Mortgage, LLC (11-5529); Coolack v. Select Portfolio Servicing, Inc. (11-5531); Magat v. US Bank Nat'l Assoc. (11-5534); Flores v. Wells Fargo, N.A. (11-5535); Cerciello v. First Franklin Loan Services (11-5536); Auletta-Segura v. Green Tree Servicing, LLC (11-5538); and Abucay v. HomeEq Servicing (11-5539).  This Court also notes that three related cases have already been dismissed by this Court on the same grounds. See Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724 (D.N.J. Jan. 27, 2012)(JLL); Aquino v. Aurora Loan Services, LLC, No. 11-5518, 2012 WL 2514844 (D.N.J. June 28, 2012)(DMC); and Flores, et al. v. HSBC, et al, No. 11-5525, 2012 WL 2522987 (D.N.J. June 29, 2012)(DMC).

[2] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

2. Plaintiffs allege numerous Federal and State law claims, including but not limited to the Federal Truth in Lending Act and Regulation Z, the Federal Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, the Federal Racketeer Influenced and Corrupt Organizations Act, the Fair Debt Collection Practices Act, the Fair Credit Report Act, State and Federal High Cost Loan Statutes, the New Jersey Consumer Fraud Act, the New Jersey Lenders' Liability Law, the New Jersey RICO statutes, breach of contract, fraud and misrepresentation, negligence, among others. Pls.' Compl. ¶ 2.

The Complaint in the instant matter was filed following the dismissal of the class action suit in Almazan, et al v. 1st 2nd Mortg. Co. Of N.J., Inc., et al., No. 10-1336, 2011 WL 2652149 (D.N.J. June 30, 2011)(Civ.A.No. 10-1336, ECF No. 191). The complaint in Almazan was dismissed without prejudice on the grounds that Plaintiffs failed to adequately put any Defendants on notice of any specific claims. (Civ.A.No. 10-1336, Opinion adopting Report and Recommendation June 2, 2011, at p. 7, ECF No. 185). Specifically, the Court noted that Plaintiffs' Complaint "[did] not inform any reader what the Defendants did wrong, to whom they did it, or when they did it."Id. Plaintiffs were directed to re-file separate complaints against only those Defendants that were involved in their respective loans. Further, Plaintiffs were admonished, under the principles of Younger Abstention, to consider the existence of any pending state foreclosure or federal bankruptcy proceedings in determining whether to file a federal law suit. Id. at 9. Finally, the Court found Defendants' arguments regarding Plaintiffs' counsel's failure to comply with the Local Civil Rule 11.2, which directs a party to disclose whether the matter in controversy is the subject of any other action pending in any court, were well founded. Id. The Court warned that "[a] second round of non-compliance with that Rule will result in sanctions upon the filing of the appropriate motions." Id.

Defendant Wells Fargo, N.A. ("Wells Fargo") is a mortgage loan originator in the United States and is named in the Complaint as a parent company of its acquired lenders or subsidiaries residential mortgage-lending operations, as well as on the belief that Wells Fargo directed, participated in and/or influenced the setting and establishing of credit-relating policies and underwriting guidelines and practices used by each of the other Defendants. Pls.' Compl. ¶¶ 22-23. Plaintiffs' Complaint provides Wachovia Bank and John Doe 1-10 as the alleged subsidiaries or acquired lenders of Wells Fargo. Pls.' Compl. ¶24. Plaintiffs allege that the Defendants collectively established policies for retail and wholesale access to their loan products and that each Defendant directed, participated in and/or influenced the setting and establishing of credit-related policies, procedures, practices and underwriting guidelines used by each of the other Defendants. Pls.' Compl. ¶¶ 25-26.

The Complaint provides facts specific to each Plaintiffs' respective mortgage.[3] Such allegations consist of a variation on the following combination of specific details and general conclusions regarding the loans acquired:

**Maria and Alexander Yambao[4]**

---

[3] As noted in Gutierrez, the Complaint in this action, as well as in each related action, essentially constitutes a re-filing of the original complaint from Almazan. 2012 WL 272807, at *1. Judge Linares noted that the new complaints "siphoned off the individual lender Defendants named in the Original and Amended Complaints into separate actions" and refiled the complaint "slightly modified and tailored to each individual lender with a short section of around ten numbered paragraphs detailing the facts of the specific named Plaintiffs with whom each Defendant had made mortgage loans." Id. As a result of this apparent re-filing, the counts alleged in each complaint are identical, down to their numeric order. As noted by Judge Linares, the only apparent difference among the Complaints are the addition of facts particular to each named Plaintiff.

[4] The following excerpt is taken directly from Plaintiffs' Complaint to illustrate the nature of the specific allegations provided for each Plaintiff, to the extent they are included.

230.  Borrowers purchased the residence 12/27/2004 for $623,390.  The secured several financing arrangements from Lenders including Gateway Funding Diversified Mortgage Services, Wells Fargo, Wachovia Mortgage Corp. and The Federal Home Loan Mortgage Co as well as their successors and assigns.  The loan (s) was/were declared in default by the Mortgagees on 7/1/2010.

231.  First Mortgage: The Gateway Loan was written in the amount of $390,000 and characterized as a fixed rate 30 year term loan, amortizing at an APR of 6.625%.  Monthly payments were initially $2,497.22.  The loan was considered a "sub-prime" loan which required, by the Lenders, a higher than "par interest rate.

232.  A 2nd mortgage was in place benefiting Wachovia Mortgage Corp. for $211,000 dated 5/17/2005.  A subordination agreement deferring to the 1st Mortgage above was executed and recorded 6/27/2007.  Total funding on the residence was $601,000 or a 96% Loan to Value ratio.

233. The completed HUD-1 closing statement was not provided as signed.  The Client was not provided completed and/or signed FNMAE form 1003 Mortgage Applications, Amortization schedules, or Verification Statements for Employment and either a pro forma or a Financial Statement.  ***The Federal Disclosure Statement was not provided.  Relevant & vital documents were unsigned.***

234.  The Lenders and/or Assignees included regularly and routinely granted mortgage financing.

235.  The source of the original mortgage solicitation was not provided.

236.  ***The loans were completed with no apparent employment/income verifications.***

237.  The LTV noted of 96% was aggressive lending and should have been supported by a Mortgage Insurance Plan to offset the low inherent equity of the transaction.

238.  The loan apparently disregarded the ability to repay since the review of the client's financial situation revealed insufficient reliable income and liquidity as well as extended liabilities so as to make the aforementioned loan in excess of the Borrower's ability to repay.

239.  **Substantive Unconscionability: The UCCC considers entering into a transaction with the knowledge that the consumer could not receive a "substantial benefit" from it or if there was no reasonable probability of payment in full as demonstrable of "Substantive Unconscionability".**

240.  The loan rates appeared to be of sub-prime nature since they clearly exceeded the rate borne by more "A" prime worthy customers.  It was a "High Risk Loan" as referenced in

>NJPL 2009, c84 and NJPL 2008 c127.  Signed documentation including TIL, with annual percentage rate, finance charge, amount financed and total of payments were not disclosed in a clear & conspicuous manner as to reflect the legal obligations of the parties.  Neither were these disclosures segregated from other information in a consumer-keepable format.  None of those available documents were signed and/or provided.
>
>241.  Absent proper customer notification cited above, and with no proper HOEPA notice, written in conspicuous type size forthcoming, the Lender (s) seem seriously deficient in disclosures.
>
>242.  The Lender's should have been more aware of the shifting economic winds and have insisted on greater applicant equity and subsequently followed a more conservative lending policy to offset that pending value decline.
>
>243.  The loan amount was excessive and fraught with potential abuse.  Defendants made numerous over-stated material representations to Borrowers regarding loan affordability but often understated the deleterious effects of open-ended dangers such as variable rate interest calculation.
>
>244.  **Predatory Lending: The pattern of irregularities, unrealistic asset-based reliance, flagrant lack of disclosures, and under-emphasis on liquidity contributed to *predatory lending*.  These deceptive practices, fraudulent acts and omissions seemed poised to disregard and misrepresent the best interests of the Borrowers.  High LTV loans set a stage for unrealistic expectations of payment in the future.  Predatory patterns were replete in this high-risk transaction.**[5]

As demonstrated above, the only allegation specific to any named Defendant is that Wachovia and Wells Fargo are among the entities involved in Plaintiffs' lending transaction. No further allegations regarding the specific acts done by Defendants are provided.  The remaining Plaintiffs at most provide a variation of comparable facts and similarly do little more than allege some level of participation by Defendants and other lenders in their mortgage transactions.  The Court will address each Plaintiff's specific allegations in turn.

---

[5]As will be discussed in greater detail below, these allegations closely mirror those highlighted as factually deficient in the dismissal of the Gutierrez action.  There, Judge Linares found such allegations to "mimic the generality and legally conclusory statements made in the rest of Plaintiffs' Complaint." 2012 WL 272807, at *4.

Carlos Gabriel is alleged to have secured a mortgage from Chase Bank, USA, NA on July 26, 2007. The mortgagees declared the loan to be in default as of June 1, 2008. Plaintiff alleges that the lenders and/or assignees involved in his mortgage was Mortgage Plus and Chase Bank, USA, NA, their successors and assigns. Plaintiff further alleges that he signed a blank settlement statement, which contained a yield spread premium of $2,280 paid outside the closing to Mortgage Plus by Chase, as well as a $6,840 loan origination fee paid to Mortgage Plus. Chase is alleged to have received a $500 processing fee and $300 underwriting fee. Plaintiff does not allege any specific facts concerning Defendants Wells Fargo, Wachovia, or the John Doe Defendants.

Marilou Lelina is alleged to have refinanced her home and secured a first mortgage with WMC Mortgage Corp. On August 1, 2008 the mortgagee declared the mortgage in default. Lelina declared a Chapter 7 bankruptcy on July 15, 2010. According to Plaintiff, other lenders and/or assignees involved in her mortgage transactions were 1st 2nd Mortgage Company of New Jersey, US Bank NA as Trustee for SABR, American Servicing Company, WMC Mortgage Corp., Countrywide Home Loans, and America's Wholesale Lender, their successors and assigns. No where does Plaintiff allege whether or how any of the Defendants named to this action were involved in her mortgage.

Sphendim and Adisha Ziba are alleged to have executed a note and mortgage to the New Century Mortgage Corporation on January 9, 2006. An assignment of the mortgage was allegedly executed by Elizabeth Matthis, Vice President of Loan Documentation and Anita Antonelli, Vice President of Loan Administration of Wells Fargo NA, Attorney-in-fact for New Century Mortgage Corporation to Deutsche Bank National Trust Company, as trustee for Morgan Stanley ABS Capital

Trust 2006 HE3.[6]  Plaintiffs were allegedly not informed that the mortgage would be sold.  Plaintiffs also allege that New Century Mortgage Corporation made numerous material representations to the borrowers and clearly mislead, cheated, lied, and violated the borrowers' trust in order to benefit from a large amount of revenue.  The mortgage went into default and a foreclosure complaint was filed in 2008.  None of the factual allegations provided concerning the Zibas mortgage detail the precise nature of involvement of any of the named Defendants beyond the assertion that officials of Wells Fargo executed the assignment of the loan.

Denise and James Carrol allege that they refinanced their home with a first mortgage from Castle Point Mortgage, Inc. on June 26, 2006.  Plaintiff asserts that the original lender on the mortgage was in a long line of banks and/or assignor-servicers that included MERS, Inc., Act Properties, SPS, Inc., Wells Fargo, and Roosevelt Mortgage Acquisition Co., together with their successors and assigns.  Plaintiffs also allege that various fees which totaled $7,952.00 were charged and paid to Castle Point Mortgage, Inc.  The mortgage would later be declared in default and the borrowers proceeded into a Chapter 7 bankruptcy filing.  Plaintiffs provide no further factual allegations regarding any of the named Defendants beyond the undefined participation of Wells Fargo in connection with the Carrol's mortgage.

Cesar G. and Mildred A. Estacio allege that they acquired a first and second mortgage on their home by Wells Fargo and GMAC on August 25, 2006.  Plaintiffs also allege that the successors

---

[6]Plaintiffs' Complaint present conflicting statements on this point, as Plaintiffs later assert that "[t]he assignment of mortgage dated July 10, 2008 by Elizabeth Matthis and Anita Antonelli both Vice President of Loan Administration of American Servicing Company represents NEW CENTURY MORTGAGE CORPORATION *NOT* DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL 1 INC. TRUST 2006-HE3 are not officer of Assignee."  The Court, however, finds this conflict of little consequence as neither assertion appears relevant to any named Defendants to this action.

and assigns of the named entities were involved in their mortgage transaction. Plaintiffs do not provide any further factual allegations implicating any wrongful conduct on the part of any named Defendant.

Lory Lim and Cenon Estefa allegedly secured a first mortgage on June 24, 2005 from New Century Mortgage. According to Plaintiffs, Carrington Mortgage Services and Wachovia & Community Home Equities would become subsequent parties to the mortgage transaction. The loan is alleged to have regressed into default. A second mortgage was allegedly extended by Wachovia on March 22, 2007. According to Plaintiffs, fees totaling $9,375 were paid to Community Home Equities and New Century Mortgage, which, it is argued, represent a "profligate fee which is questionable at least and underscores the Predatory Lending practice and violation of UDAP and perhaps the RICO statutes which characterized this Banking transaction." Plaintiffs do not allege further facts to specify the precise nature of Defendant Wachovia's conduct or that of any other named Defendant in connection with the mortgage. Nor do Plaintiffs connect any Defendants to the fees charged.

Amadio Mauludi and Rose Quiambao are alleged to have secured a first mortgage from Franklin American Mortgage Co. According to Plaintiffs, the MERS, Inc., Wells Fargo Bank, Accurate Mortgage Co., and their successors and assigns would later become part of the lending transaction. The mortgage was declared in default on May 1, 2009. Plaintiff further alleges that a yield spread premium of $5,827 was paid by Franklin American Mortgage Co. to Accurate Mortgage Co., which Plaintiff maintains constituted an undisclosed premium and profligate fee. While Plaintiff notes that Wells Fargo became part of the lending transaction, Plaintiff does not further indicate what the precise nature of that participation was or how Wells Fargo engaged in any

9

wrongdoing. Plaintiff does not provide any facts to allege a connection between the fees paid to Accurate Mortgage, Co. and any of the named Defendants.

Mobeen and Rafia Mortuza are alleged to have secured a mortgage on their residence with Washington Mutual on January 9, 2007. The mortgage would later proceed into default. According to Plaintiffs, JP Morgan Chase Bank was also a lender and/or assignee involved in the mortgage transaction. Plaintiffs do not allege any facts implicating any of the named Defendants to this action.

Plaintiff Joepe Guy and several of his family members are alleged to have purchased a family residence and secured a first and second mortgage simultaneously with the same lenders. The lenders and/or assignees alleged to have been involved in the mortgage transaction are Mortgage Electronic Registration Systems; Real Estate Mortgage Network; Wells Fargo Bank, FSB; Wells Fargo NA; Wells Fargo Home Equity; US Bank National, NA; US Bank FSB; and their successors and assigns. The original solicitation of the mortgage was allegedly conducted face to face with a representative of the Real Estate Mortgage Network, Inc., Mr. Cesar Estacio. Clear and conspicuous notice was allegedly not evident through the patterns of the transactions with the lenders and their representative Mr. Estacio. Plaintiff does not provide any further factual allegations regarding the conduct of Wells Fargo beyond their alleged undefined participation in the loan. Plaintiff does not provide any facts concerning Wachovia or any of the John Doe Defendants.

Ciro and Franca Conti are alleged to have executed a note and mortgage to the American Financial Resources, Inc. on February 13, 2007. The mortgage proceeded into default and a foreclosure complaint was filed on October 26, 2007. Plaintiff does not allege any participation or facts tending to implicate any of the named Defendants to this action. Rather, Plaintiffs' allegations focus on the alleged wrongful conduct of American Financial Resources, Inc. alone.

Filnorman and Valmeros Laping allegedly secured financing from Wells Fargo Bank on January 31, 2007. The loan was later declared in default and foreclosure proceedings were commenced. Plaintiff does not provide further factual allegations beyond the circumstances of their loan to indicate any wrongful acts on the part of Wells Fargo.

Marad Katib secured a first mortgage from World Savings Bank and others on September 19, 2007. The other lenders involved in the transaction are alleged to have been Wells Fargo Bank, Wachovia Bank, and Global Mortgage, together with their successors and assigns. The mortgagees would later declare the mortgage in default. Fees totalling $14,807 were charged to the borrower and are alleged to have been de facto YSP in an amount of $13,680. Plaintiff Katib does not allege any facts to demonstrate any wrongful conduct on the part of the named Defendants.

Plaintiff Zhang Li is alleged to have secured a mortgage with Wachovia Bank, NA. The mortgage would later be declared in default. Transactional fees totaling $1,400 were allegedly charged to Plaintiff in the transaction. No further specific facts regarding Wachovia's conduct during the transaction in question are provided.

Jesus and Ligaya Flores, Catalino and Claudia Bautista, Eduardo and Lorna Diaz Cabrera, Mike and Arceli Balingit, and Liezl and Jessie Robles do not provide specific facts regarding their alleged foreclosures, but are rather alleged to "[h]ave a similar situation with the rest of the Plaintiffs given here."

For the following reasons, this Court finds that the aforementioned allegations in connection with the remaining general statements provided throughout the rest of the Complaint are insufficient to state a claim upon which relief can be granted. Defendants Motion to Dismiss is therefore **granted.**

II.     MOTION TO DISMISS

A.     LEGAL STANDARD

1.     Standard of Review for Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(6)

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a ... motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the Defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, 2009 WL 3806296, *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 129 S.Ct. at 1950).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950.

    2.    FED. R. CIV. P. 9(b)

Fraud-based claims are subject to FED. R. CIV. P. 9(b). Dewey v. Volkswagon, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) ("[New Jersey Consumer Fraud Act] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A Plaintiff must state the circumstances of the alleged fraud "with sufficient particularity to place the Defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the Plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

    **B.**    **DISCUSSION**

Plaintiffs' Complaint suffers from many of the same pleading deficiencies that were noted in the Almazan case, as well as the dismissals of several similar complaints to follow. Accordingly, this Complaint must also be dismissed. As previously noted, this Court explained that the complaint in Almazan "[did] not inform any reader what the Defendants did wrong, to whom they did it, or when they did it." Although Plaintiffs may have cured the "who" deficiencies by filing this separate complaint against those Defendants who were allegedly involved in their respective loans, Plaintiffs' Complaint in this action remains deficient regarding the "what" and "when" of Defendants alleged

conduct.[7] Such pleading deficiencies fail to properly place Defendants on notice of "any specific acts that it or [its subsidiaries] committed during the course of its mortgage transactions with Plaintiffs." Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724, at *11. (D.N.J. Jan. 27, 2012).

This Court has already found occasion to dismiss three similarly pled complaints filed in the wake of the Almazan dismissal. Of particular note is the case of Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724. (D.N.J. Jan. 27, 2012) in which the Honorable Jose L. Linares provided an in depth discussion regarding the sufficiency of Plaintiffs' complaint. There, on the basis of a similarly pled complaint to that in issue here, Judge Linares found that "as a general matter, the paragraphs in the complaint [did] not adequately put Defendant [ ] on notice of any specific claims linked to specific acts that it or the John Doe Defendants committed during the course of its mortgage transactions with the Plaintiffs." Gutierrez v. TD Bank, 2012 U.S. Dist. LEXIS 10724, at * 11. Rather, the Court found that the specific facts addressing the mortgage transactions between Defendant and Plaintiffs were "scarce," "while the Complaint extensively states and restates legally conclusory statements regarding Defendant's wrongful conduct as defined exclusively within the terms of the relevant statutes or case law authority." Id. at *17. By way of example, Judge Linares found that, given the allegations raised by the complaint, Plaintiffs failed to indicate:

> which exact disclosures required by law were not provided; the nature and extent of any credit reporting which occurred by Defendants in violation of federal law; what, if anything, was inaccurate about such reporting; the substance of any written notices to Plaintiffs which violated their rights under state law; which terms of any contract were breached by Defendants; the nature of the emotional distress suffered by Plaintiffs; what, if any, benefit Defendants may have obtained due to alleged inaccuracies represented to Plaintiffs as amounts owed for any loans; what representations, if any, Plaintiffs made to Defendants

---

[7]This Court notes here that several of Plaintiffs' pleadings do not even appear to remedy the "who" deficiency as they fail to implicate any of the Defendants named to this action.

> regarding their financial circumstances and their "ability to repay" justifying their allegations regarding Defendants predation, and so on.

Gutierrez, 2012 U.S. Dist. LEXIS 10724, at * 17-18. Finally, the Court took issue with the fact that Plaintiffs' opposition failed to cite to any paragraphs in the complaint "wherein facts relevant to their alleged claims are discernable." Id. at *18.

This Court followed suit from Gutierrez with the dismissal of the complaints in Aquino v. Aurora Loan Services, LLC, No. 11-5518, 2012 WL 2514844 (D.N.J. June 28, 2012) and Flores, et al. v. HSBC, et al, No. 11-5525, 2012 WL 2522987 (D.N.J. June 29, 2012). In Aquino and Flores, the Court found that the Plaintiffs were similarly deficient in their pleadings and therefore failed to state a claim upon which relief might be granted. Plaintiffs now present identical claims to those raised in Gutierrez, Flores, and Aquino, as well as nearly identical factual allegations, with the exception of the inclusion of the specific details of each Plaintiff's mortgage summarized above. Consequently, Plaintiffs' Complaint suffers from the same factual deficiencies highlighted in the preceding caselaw and must therefore be dismissed.[8]

The Third Circuit has held that "[a]lthough a Plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court

---

[8] The Court also notes that claims common to both the Gutierrez and the instant action were dismissed in Gutierrez as not cognizable as a matter of law. 2012 U.S. Dist. LEXIS 10724, at *35. Such claims include (1) furnishing inaccurate information to credit agencies (Count 5); (2) failure to correct inaccurate reporting (Count 6); (3) failure to provide required notices and disclaimers (Count 7); (4) predatory and negligent lending (Counts 10 and 28); (5) New Jersey Licensed Lenders Act (Count 11); and (6) unfair business practices (count 16). The Court in Gutierrez found that the aforementioned counts should be dismissed on the grounds that they were redundant or failed to cite to any law or statute supporting a claim independent of the claims already raised. The Court therefore dismissed the aforementioned claims without prejudice "to Plaintiffs' amendment of any claims asserted therein which do not duplicate other claims already stated in Plaintiff's complaint." Id. at *40. This Court echoes the conclusions drawn in Gutierrez in further support of the dismissal of the aforementioned claims.

to infer more than the mere possibility of misconduct.'" Guirguis v. Movers Specialty Servs., 346 Fed. App'x. 774, 777 (3d Cir. 2009), citing Iqbal, 129 S.Ct. at 1950.  Here, Plaintiffs' Complaint is almost entirely a recitation of legal conclusions closely mirroring the language of the statutes Defendants are claimed to have violated.  Indeed, the Complaint does more to inform this Court of the state of the law than it does to inform the Court of the facts upon which Plaintiffs' claims are based.  Such pleading leaves this Court unable to discern the appropriate causes of action for which Defendants might plausibly be held accountable.   Moreover, the Court is left with the impression that either Plaintiffs are unable to identify the true nature of the causes of action they allege, or that Plaintiffs allege that Defendants have violated each statute in virtually every way conceivable.  Plaintiffs must provide some grounds upon which this Court may assess the sufficiency of each of the claims asserted, yet they have failed do more than vaguely allege that Defendant was a participant in some of the Plaintiffs' mortgage transactions.

Accordingly, this Court finds that the entirety of Plaintiffs' Complaint fails to plead with the requisite particularity to satisfy even the liberal pleading standards of Rule 8(a), let alone the heightened pleading standard for Plaintiffs' fraud-based allegations under Rule 9(b).[9]  Plaintiffs'

---

[9]With respect to the Gutierrez Plaintiff's fraud-based claims, Judge Linares addressed the argument, similarly raised here, that the requirements of Rule 9(b) should be relaxed for circumstances where factual information is exclusively within the opposing party's knowledge or control.  The Court found the rule cited by Plaintiffs to be inapplicable under the circumstances, and this Court agrees.  As noted by Judge Linares,

> Plaintiffs need only state with particularity the who, what, when and where of the false misrepresentations or omissions made by Defendants based on their familiarity with said misrepresentations as experienced by them in the mortgage transactions . . .

Id. at 25-26 (emphasis added).  There, as here, "those facts are both within the Plaintiffs' control and need not be enumerated in every detail or with respect to each and every instance to meet the heightened pleading standard for fraud-based claims."  Id.  Just as the Gutierrez Plaintiff was not relieved of its obligation to plead claims of fraud with specificity under Rule 9(b), Plaintiffs here

16

Complaint must therefore be dismissed.[10]

### III.  CONCLUSION

Accordingly, as this Court finds that Plaintiffs have failed to state a claim upon which relief can be granted, Defendant's motion to dismiss is **granted without prejudice**.

S/ Dennis M. Cavanaugh<br>
DENNIS M. CAVANAUGH, U.S.D.J.

Date:  July  30  , 2012
cc:  All Counsel of Record
     Hon. J. A. Dickson, U.S.M.J.
     File

---

will not be so relieved.

[10] As this Court finds that the motion to dismiss should be granted for the reasons herein expressed, the Court declines to address the statute of limitations argument raised by Defendant and addressed by Judge Linares in the Gutierrez opinion. Similarly, this Court declines to address the arguments raised by Defendants concerning abstention.